**In re STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST LITIGATION.**

**This Document Relates To: All Indirect Purchaser Actions.**

No. M:07–cv–1819 CW.
MDL No. 1819.

United States District Court,
N.D. California,
Oakland Division.

May 21, 2009.

581

Christopher T. Micheletti and Jane Yi, for Plaintiffs.

Patrick M. Ryan and Laura A. Guillen, both of Winston & Strawn LLP, argued as liaison counsel for all Defendants.

## ORDER ADOPTING SPECIAL MASTER'S REPORT AND RECOMMENDATION FOR ALLEGED DISCOVERY VIOLATIONS BY INDIRECT PURCHASER PLAINTIFFS

CLAUDIA WILKEN, District Judge.

The Court has before it the matter of whether to adopt the Special Master's Report and Recommendation for Alleged Discovery Violations by Indirect Purchaser Plaintiffs ("Report"), Defendants' Motion To Adopt the Report (DE 707), Indirect–Purchaser Plaintiffs' Objections to the Report (DE 701), Defendants' Statement of Partial Non–Opposition and Response to Plaintiff's Objections (DE 713), and all other pleadings and papers on file in this action relevant to this matter.

Having thoroughly reviewed the above, and having reviewed the Special Master's factual findings for clear error and Her Honor's legal conclusions, if any, *de novo*, it is hereby **ORDERED:**

1. The Court adopts and affirms the Special Master's Report and Recommendation for Alleged Discovery Violations By Indirect Purchaser Plaintiffs, filed April 17, 2009 as docket number 677 ("Report"), and attached hereto as Exhibit A, in its entirety, except that the Court clarifies the Report as follows:

2. Numbered paragraph 1 on page 7 of the Report is clarified to read: For class certification issues only, plaintiffs' experts be precluded from using or referencing any third-party data received prior to the filing of their motion for class certification and related expert reports on January 29, 2009. Plaintiffs' experts may, however, refer to and analyze data defendants' expert referred to and analyzed in her expert report.

3. Numbered paragraph 3 on page 7 of the Report is clarified to read: Plaintiffs are precluded from submitting new opinions or analyses by their experts in support of class certification along with their reply brief in support of class certification. Plaintiffs' experts are limited solely to opinions and analyses that rebut the opinions of defendants' expert.

**IT IS SO ORDERED.**

## SPECIAL MASTER'S REPORT AND RECOMMENDATION FOR ALLEGED DISCOVERY VIOLATIONS BY INDIRECT PURCHASER PLAINTIFFS

FERN M. SMITH, Discovery Master.

On April 9, 2009, after briefing was submitted by the parties, a hearing on Defendants' Joint Letter Brief regarding alleged discovery violations by Indirect Purchaser Plaintiffs ("Plaintiffs") was held. Having considered the briefings, the oral arguments presented, and the relevant record in this case, the Special Master submits the following Report and Recommendations, as requested by the Court:

### A. *Expert Discovery*

█ On January 29, 2009, Plaintiffs filed a Motion for Class Certification and the expert reports of Dr. Michael J. Harris and Dr. Mark Dwyer in support thereof. Defendants allege that Plaintiffs violated the Stipulation and Order Regarding Procedures Governing Expert Discovery filed March 10, 2008 (the "Expert Discovery Order") and the Federal

Rules of Civil Procedure governing expert reports because Plaintiffs did not timely disclose to Defendants the data and information considered by their experts.

The Expert Discovery Order, which was entered in early 2008, provides:

Within 3 business days of any party serving any expert reports and/or expert declarations in this case pursuant to Fed. R.Civ.P. 26(a)(2)(B), the party or parties proffering the expert witness shall produce all other documents and/or information required by Rule 26(a)(2)(B), namely "the data or other information considered by the witness in forming the [expert's] opinions . . . ." [D]ata or other information considered "shall include, but is not limited to, raw data, spreadsheets, computerized regression analyses and/or other underlying reports and schedules sufficient to reconstruct the expert's work, calculations, and/or analyses."

Docket Entry ("DE") 381, Expert Discovery Order, March 10, 2008, pp. 1–2.

In September 2008, at a Case Management Conference before Judge Wilken, Plaintiffs sought to extend the deadline for filing their Motion for Class Certification and stated that many of their subpoenas for third-party data were outstanding and that their experts needed such data to prepare their reports in support of class certification. Plaintiffs represented to the Court that, upon receipt of any third-party information, such information would be provided to their experts.

At the time of the Case Management Conference, Plaintiffs' counsel had apparently received some data and information from a number of third parties. Several other third parties provided data and information to Plaintiffs after the Case Management Conference, and well before Plaintiffs served their experts reports along with their Motion for Class Certification.

In early January 2009, at Plaintiffs' request, the parties entered into a stipulation to extend the briefing and hearing schedule for Plaintiffs' Motion for Class Certification, because "the Parties' experts require[d] a limited additional period of time to review the data produced and draft their expert reports to be submitted in connection with the class certification briefs." (DE 631, Stipulation and Order to Extend Page Limits and Time to File Class Certification Briefs, filed January 9, 2009.) A few weeks later, Plaintiffs' counsel represented to Defendants' counsel that any information upon which Plaintiffs' experts would rely would be provided to Defendants contemporaneously with the filing of that report. The same representation was made the day before Plaintiffs filed their Motion for Class Certification in late January.

In their reports, Plaintiffs' experts represented that they had not received sufficient documents or information from third parties to complete their proposed models in support of the Motion for Class Certification. (See, DE 645, Declaration of Michael J. Harris, PH.D. in Support of Plaintiffs' Motion for Class Certification, ¶ 70 ("As of the writing of this report, I and Dr. Dwyer had not yet received the data necessary to complete our models but have been advised it is forthcoming."); Id. at ¶ 71 ("Third parties have agreed to provide, at a minimum, four key pieces of information."); DE 645, Declaration of Mark Dwyer, PH.D., in Support of Plaintiffs' Motion for Class Certification, ¶ 31 ("it is useful first to review the types of data that will be analyzed"); Id. at ¶ 32 ("It is my understanding that scores of third parties are providing data regarding end use products."); Id. at ¶ 34 ("Distributors are producing transaction information both for the end-use products they purchased, and for those that they sold, including quantity, price, date, location and purchaser type . . . Thus these data will be rich in information . . .").) According to Plaintiffs' experts, they did not complete the models proposed in their reports and analyzed no third-party data or information in their reports.

Pursuant to the Expert Discovery Stipulation, third-party data and information "considered" by Plaintiffs' experts was to be provided to Defendants' counsel by Tuesday, February 3, 2009—three business days after Plaintiffs filed their Motion for Class Certification. Plaintiffs provided no documents to Defendants by that deadline. But Defendants believed from information provided by

third parties that Plaintiffs' counsel had been in possession of a substantial amount of third-party data for several months before the experts' reports were served. Thus, Defendants became concerned that Plaintiffs' counsel intended to have their experts analyze the data as part of an amended or supplemental report which would prejudice Defendants by (1) preventing Defendants' expert from having the opportunity to respond to the opinions regarding the data and, (2) preventing Defendants' counsel from deposing Plaintiffs' experts regarding their analysis of the data.

On the date the documents were due under the Expert Discovery Order, Defendants' counsel began to press Plaintiffs' counsel for answers. In an email on February 3, 2009, Defendant's counsel stated, with respect to documents received from third parties by Plaintiffs, "given certain statements by the experts in connection with the motion for class certification about, among other things, information that is 'forthcoming' it is important that we resolve this matter immediately." On February 4, 2009, Defendant's counsel e-mailed Plaintiffs' counsel to arrange for a conference call to discuss Plaintiffs' failure to produce documents along with the expert reports and other issues; the Expert Discovery Stipulation was attached to the e-mail. The call took place the next day and Defendants' counsel informed Plaintiffs' counsel that it appeared that Plaintiffs were in violation of the Expert Discovery Stipulation, because no documents had been produced by Plaintiffs with respect to the experts' reports. In response, Plaintiffs' counsel represented his belief that all documents that came within the discovery stipulation were listed on Exhibit 2 to the experts' reports. Those exhibits listed no third-party data, however. Almost a week later, on February 10, 2009, Plaintiffs' counsel sent an e-mail to Defendants' counsel, stating "I am not sure if you were waiting for an answer regarding any further production from our experts, but if so, please be advised that we have reviewed the expert stip on discovery with the experts and believe that we have complied with it."

After several requests by Defendants' counsel for Plaintiffs to let Defendants know what data Plaintiffs had received from third parties, Plaintiffs sent a document entitled "Indirect Purchaser Plaintiffs' List of Information and Documents Produced By Third Parties In Response to 3rd Party Subpoenas As of February 9, 2009" (hereafter, the "Third Party Data Inventory"). The Third Party Data Inventory reflected third-party data and information from forty-five (45) third parties received by Indirect Purchaser Plaintiffs' counsel as of February 9, 2009. The Third Party Data Inventory did not specify when Plaintiffs' counsel received various third-party data, or whether and when specific third-party data was provided to Plaintiffs' experts.

On February 10, 2009, Defendants' counsel sent a letter to Plaintiffs' counsel requesting that they "confirm which information and documents, if any, were received [by the experts] after January 29, 2009" (the date when the Motion for Class Certification was filed). And "If you have already provided third-party data to your experts, please advise what information and documents were provided." On February 16, 2009, counsel for Plaintiffs stated "please be advised that all third-party documents and information that IP Plaintiffs produced to Defendants on Friday, Feb. 13, has been provided to the Harris Economics Group ("HEG") [Plaintiffs' experts]." Counsel for Plaintiffs again did not directly respond to Defendants' request to "confirm which information and documents, if any, were received after January 29, 2009."

On March 5, 2009, Defendants' counsel again wrote to Plaintiffs' counsel concerning what, if any, third-party documents or information were provided to Plaintiffs' experts in connection with the Motion for Class Certification and when. Defendants' counsel also informed counsel for Plaintiffs that if Plaintiffs' experts intended to amend their reports based on any third-party information now in their possession, any such amendment(s) would be improper. Counsel for Defendants provided counsel for Plaintiffs with an opportunity to attempt to ameliorate some of the prejudice to Defendants by providing any

amended reports immediately. On March 5, 2009, Defendants' counsel wrote:

Nevertheless, assuming that the Experts intend to provide late amended Reports, they must provide such Reports to Defendants immediately so that the significant prejudice already caused by the delay will not be further exacerbated. If Indirect Purchaser Plaintiffs' Experts intend to amend any Reports/Declaration(s), we demand that you provide us with any such amendments no later than March 16, 2009. If Defendants' counsel do not have them by such date, it will not be possible for us to properly analyze them for use in the Opposition to Class Certification and in time for the Experts' depositions.

Please confirm by March 9, 2009 whether Indirect Purchaser Plaintiffs' Experts intend to amend any Reports/Declaration(s) and, if so, that those amended Reports/Declaration(s) will be delivered to defendants' counsel no later than March 16, 2009.

On March 13, 2009, Plaintiffs' counsel responded, and acknowledged for the first time that, despite Plaintiffs' experts' representations that information necessary for their analyses was "forthcoming," Plaintiffs' experts were in possession of the information referenced in the Third Party Data Inventory prior to when they filed their reports in support of the Motion for Class Certification. Plaintiffs' counsel also stated in response that "Plaintiffs' counsel received some of the information listed in the February 9 list in 2008, and some information in January 2009 . . . With regard to any supplemental report or analysis by plaintiffs' experts, Plaintiffs will comply with Rule 26 of the Federal Rules of Civil Procedure." Defendants produced support for their claim that Plaintiffs' counsel received a substantial amount of third-party data at least seven months prior to when the experts filed reports in support of Plaintiffs' Motion for Class Certification.

On April 1 and 2, 2009, Defendants deposed Plaintiffs' experts and questioned the experts on what third-party data they received prior to the submission of their reports, and what third-party data the experts considered prior to executing their reports.

Plaintiffs' experts confirmed that they relied upon third-party information in deciding 1) which econometric models to use in this case, and 2) whether they had sufficient data to complete the models by January 29, when they filed their reports. For example, Dr. Dwyer testified as follows:

Q: So in determining that you couldn't perform a reduced-form analysis at this time, you relied on the data that you received from third parties prior to the execution of your report this case?

A: That's correct.

(Dr. Mark Dwyer Dep. 221:2–12, April 2, 2009.)

Plaintiffs acknowledge that it was not until the depositions of Plaintiffs' experts that Defendants acquired certain information as to what those experts had reviewed and why they claimed that they could not estimate the necessary models to support the motion for class certification with the information that they had already received. During his deposition on April 1, 2009, Dr. Harris identified some of the data and information from third parties his firm, Harris Economic Group ("HEG"), had in its possession, and why said data was insufficient for completing their proposed econometric models. Dr. Harris also stated that he could not remember everything that he and Dr. Dwyer received, nor what they had analyzed.

Based on my review of the evidence, records, and documents, it is my opinion that Plaintiffs did not adequately or timely disclose which third-party data their experts considered and when they received it. Plaintiffs did not provide the Third Party Data Inventory until February 9, 2009, and, on March 13, 2009, conceded that the information referenced therein was provided to Plaintiffs' experts prior to January 29, 2009. The Third Party Data Inventory did not list the specific files Plaintiffs' experts considered before executing their reports. Defendants maintain that they are prejudiced because they still do not know which third-party files Plaintiffs' experts actually considered.

■ Plaintiffs failed to follow the Stipulation and Order Regarding Procedures Governing Expert Discovery and Federal Rule of Civil Procedure Rule 26 governing expert reports by not timely disclosing to Defendants third-party data and information considered by Plaintiffs' experts. Defendants were prejudiced by these violations in preparing for and conducting the depositions of Drs. Harris and Dwyer and in preparing the opposition to Plaintiffs' Motion for Class Certification, although the amount of prejudice can be argued. Defendants likely will be significantly prejudiced, however, if Plaintiffs experts' are allowed to issue reports in support of Plaintiffs' reply memorandum in support of class certification that use in any way the third-party data.

In order to mitigate any prejudice that has occurred, and to avoid further prejudice to Defendants, I recommend that:

1. Plaintiffs' experts be precluded from using or referencing any third-party data received prior to the filing of their Motion for Class Certification and related expert reports on January 29, 2009.

2. Plaintiffs provide, within three Court days of this Court's Order, a complete and detailed list of third-party data and information considered by their experts to date. Such a list must include: (a) reasonably specific identification of the third-party data files; (b) the date Plaintiffs' counsel received the data; (c) the date Plaintiffs' experts received the data; (d) identification of the proposed model(s) plaintiffs' experts intend to utilize the specific data in, and (e) a description of how the data will be used. Such information must be supplemented as Plaintiffs receive new third-party data such that within three Court days of Plaintiffs' receipt of such data, the above information must be provided.

3. Plaintiffs be precluded from submitting new opinions or analyses by their experts in support of class certification along with their reply brief in support of class certification. Plaintiffs' experts should be limited solely to opinions that rebut the opinions of Defendants' expert(s), and may not include opinions or analyses that should have been included with the original moving papers.

4. Defendants be permitted further depositions of Plaintiffs' experts, Drs. Harris and Dwyer, limited solely the information contained within the list of third-party data described, their opinions and analysis, and time of their use of third-party data. Because Plaintiffs' reply brief is due on May 28, 2009, and the class certification hearing is scheduled for June 11, 2009,[1] Plaintiffs are required to produce Drs. Harris and Dwyer for deposition on June 3, 2009, and June 4, 2009, respectively.

5. If Plaintiffs' reply briefs include any new opinions or rely in any way on third party data, then by no later than June 9, 2009, Defendants be allowed to file a surrebuttal brief and expert report in opposition to class certification.

### B. Leasing Agreements and Lease Communications

■ Defendants have propounded discovery on each of the named plaintiffs and have requested the production of "All contracts or other agreements for the purchase of SRAM, and/or products containing SRAM." During the deposition of one proposed class representative—Stargate Films—Defendants became aware that the proposed class representative leased products allegedly containing SRAM and that counsel for the proposed class representative did not interpret "purchase agreement" to include lease agreements for products allegedly containing SRAM. Defendants' counsel have learned that leasing of products allegedly containing SRAM is prevalent and under the leases, banks or other financial institutions serve as the lessor and named plaintiffs the lessee. At the end of the lease period, the lessee has an option of purchasing the products or returning them to the lessor. Depending on the facts of the case, the terms of the lease, and which law governs the situation, lease

1. Due to the compressed schedule the District Court Judge may, at her discretion, want to move the class certification hearing to a later date.

agreements may be construed as true leases, or as a form of financing (*i.e.* a secured loan). In either event, "leases" for the acquisition of allegedly SRAM-containing products are "contracts or other agreements for the purchase of SRAM," because the lease itself is either a purchase or the lease discusses a possible buy-out "purchase" at the end of the lease term.

Therefore, I find that lease agreements for products allegedly containing SRAM are responsive to Defendants' requests for production and are relevant to this litigation and Plaintiffs' efforts to certify a class of "purchasers" of SRAM-containing products. The agreements are also relevant to Defendants' argument in opposition to class certification that individual issues, rather than common issues, predominate. The individual issues pertain, for example, to whether there was a purchase, as opposed to a lease, and to the valuation of the product at the end of the lease period. Because of the limited number of proposed class representatives (47) and because discovery is ongoing, I find that it is not burdensome for Interim Lead Counsel for Indirect Purchaser Plaintiff determine which proposed class representatives entered into agreements purporting to be leases for products allegedly containing SRAM and to request that those who have search for and produce their leases and related agreements along with communications that relate to (1) the terms of the purported lease; (2) the valuation of the purported leased products; (3) return of purportedly leased products to the lessor; and (4) buy-outs of purportedly leased products. The broad discovery that is allowed in anti-trust cases is equally applicable to defendants.

Each proposed class representative should produce such documents no later than April 30, 2009, as it relates to any product that was purchased or possession of which was acquired during the class period.

### C. *Spoliation of Evidence*

Defendants first became concerned about the issue of document destruction during the deposition of plaintiff David Perez, d/b/a Quality Body & Fender. Mr. Perez testified that under Quality Body & Fender's regular document destruction policy, documents are "shredded" after six (6) years and that, despite his involvement in this action, he has never suspended his destruction of documents under this policy. (David Perez Dep. 76:2–9; 77:12–20, March 10, 2009.) Mr. Perez also testified that he does not intend to suspend his document destruction policy and refused to confirm that he would not destroy relevant documents responsive to Defendants' requests and identified during his deposition once he returned to his office. (*Id.* at 117:2–123:9.)

During Mr. Perez's deposition, his counsel would not allow him to confirm that he would not continue to destroy responsive documents. (*Id.* at 120:7–122:15.) Instead, Defendants were instructed to take the issue up with Plaintiffs' counsel. (*Id.*) During the deposition of Mr. Perez, defense counsel emailed Plaintiffs' counsel the following request: "Please confirm by Noon tomorrow that all putative class representatives have been instructed by Plaintiffs' counsel to not destroy any documents that may be responsive in this case and that any document destruction policies have been in fact suspended to prevent such destruction." Plaintiffs' counsel did not respond to this email or otherwise provide assurances that plaintiffs have been advised not to destroy potentially relevant documents.

Two days after Mr. Perez's deposition, another plaintiff, Roman Munoz, testified that at the time he filed his original complaint in October 2006, he did not take any steps at all to preserve documents that would show the amount he paid for the Blackberry 7100g on which he bases his claim—including the receipt, bank or credit card statements for the card he used for the purchase, and his Cingular/AT & T wireless service account statements. (Roman Munoz Dep. 53:14–53:22; 36:20–37:24; 64:15–65:20, March 12, 2009.) Instead, Mr. Munoz only preserved the Blackberry and the box that it came in and did not look for the receipt for his purchase until after he received document requests from defendants in late December 2007.

Another proposed class representative, Kevin Kicia, testified during his deposition that he was never instructed to retain docu-

ments potentially relevant to this litigation. (Kevin Kicia Dep. 43:16–19).

Due to the testimony of Messrs. Perez, Munoz, and Kicia, Defendants are concerned that each Plaintiffs' counsel has not instructed their clients regarding the duty to retain documents potentially relevant to this litigation in accordance with federal law and as is required by the August 20, 2008 Stipulation and Order Establishing Preservation Protocols.

Interim Lead Counsel for Indirect Purchaser Plaintiffs are hereby ordered to request that each Plaintiffs' counsel confirm that they have instructed their clients to retain documents potentially relevant to this litigation in accordance with federal law and the August 20, 2008 Stipulation and Order Establishing Preservation Protocols, and to confirm the dates such instructions were given to each named plaintiff. Plaintiffs' counsel should e-mail the result of their inquiry, *in camera*, to the undersigned no later than April 30, 2009.

### D. *David Perez*

During his deposition on March 10, 2009, Plaintiff David Perez testified that the signature on the verification accompanying his responses to Defendants' interrogatories and requests for production of documents was not his, and that he did not know who signed the verification on his behalf. (David Perez Dep. at 24:12–19.) Mr. Perez has since corrected his deposition testimony via an errata. As discussed above, Mr. Perez also testified during his deposition that he has not suspended his document destruction policy, nor does he intend to. This may have led to spoliation of evidence, or future spoliation.

Plaintiffs have agreed to dismiss David Perez from this action without prejudice. Plaintiffs have further agreed that David Perez will not later be re-added as a class representative. Therefore, the issues with respect to the alleged forged verification of Mr. Perez's discovery responses and to spoliation of evidence by Mr. Perez are moot.

IT IS SO RECOMMENDED.

